IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LAWRENCE L. LENTZ and MARIANN LENTZ, Individually, and as Natural Parents and Next Friends of RACHEL LENTZ, LAWRENCE LENTZ, JR., a Minor, BRANDON LENTZ, a Minor, BRENDA LENTZ, a Minor, URSULA, LENTZ, a Minor, CODY LENTZ, a Minor, AND SHANE LENTZ, a Minor,<br><br>Plaintiffs,<br>v.<br><br>DORE & ASSOCIATES CONTRACTING, INC., and TEMPS UNLIMITED OF NEBRASKA, LLC,<br><br>Defendants. | CASE NO. 8:06CV289<br><br><br><br><br><br>MEMORANDUM<br>AND ORDER |

This matter is before the Court on the Motion for Summary Judgment (Filing No. 31) submitted by the Defendant Dore & Associates Contracting, Inc. ("Dore"). The Plaintiffs, Lawrence L. Lentz ("Lentz") and his wife and children, and the Defendant Temps Unlimited of Nebraska, LLC ("Temps"), oppose the motion. Because I find that the undisputed material facts support the application of Nebraska's "loaned servant doctrine," Dore's motion will be granted.

### PROCEDURAL BACKGROUND

Lentz filed this action in the District Court for Douglas County, Nebraska, on February 4, 2006, alleging that he suffered personal injuries on November 4, 2002, as a result of Dore's negligence. (Complaint, Filing No. 1). Lentz also named as a defendant his then-employer, Temps, "solely in accordance with Section 48-118 of the Nebraska Workers' Compensation Act." (*Id.*, ¶ 40). Neb. Rev. Stat. § 48-118 (Supp. 2005) provides, in part, that "[w]hen a third person is liable to the employee or to the dependents for the injury or death of the employee, the employer shall be subrogated to the right of the employee or to the dependents against such third person."

Dore removed the action to this Court on March 27, 2006, invoking the Court's diversity jurisdiction. (Filing No. 1-1). Dore noted that the amount in controversy exceeds $75,000 and, although the Lentz family and Temps are citizens of Nebraska, the interests of Temps are aligned with those of Lentz and adverse to those of Dore, satisfying complete diversity in accordance with 28 U.S.C. § 1332(a).

It is the duty of the federal courts to "look beyond the pleadings, and arrange the parties according to their sides in the dispute." *Rock Island Millwork Co. v. Hedges-Gough Lumber Co.*, 337 F.2d 24, 27 (8th Cir. 1964) (quoting *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69–70 (1941)). Although no party contests this Court's jurisdiction, I have conducted an independent review and find that this Court does have diversity jurisdiction under 28 U.S.C. § 1332(a).

The parties agree that Nebraska law governs the disposition of this diversity action. Nebraska is the forum state and the state in which all events giving rise to the cause of action occurred. Accordingly, this Court will apply the substantive law of the State of Nebraska. *See, e.g.*, *Zutz v. Case Corp.*, 422 F.3d 764, 769 (8th Cir. 2005) (citing *Jordan v. NUCOR Corp.*, 295 F.3d 828, 834 (8th Cir. 2002) (applying law of forum state in diversity negligence action)).

**FACTS**

The parties' briefs (Filing Nos. 33-1, 35, 36) and indexes of evidence (Filing Nos. 32, 33-2 to 33-5, 34, 37) demonstrate that the following facts are not in dispute.[1]

---

[1] The parties have fully complied with this Court's local rule NECivR 56.1, which requires the moving party to set forth in short, separately numbered paragraphs each material fact on which that party relies, with pinpoint references to the evidentiary record providing support for that fact. The responding parties must then address each such

Temps was a labor broker in Omaha, Nebraska, providing temporary workers to clients in need of such services. It charged clients a fee that covered the workers' gross wages, workers' compensation insurance, and a profit for Temps. Temps handled the workers' payroll, including tax withholding. The temporary workers placed by Temps appeared for work on a voluntary basis, day by day, and could refuse any particular job assignment.

In 2002, Dore received temporary workers through Temps, paying Temps $11.50 per hour for each worker. Dore used the workers for "clean up" and demolition preparation at an Omaha job site known as the Campbell Soup building. Dore decided how many workers it would need each day, and when they would appear for work. Lentz was one of the workers provided to Dore through Temps. Temps paid Lentz $6.00 per hour, provided him with a hard hat and a pair of safety glasses, and gave him the opportunity to purchase work gloves and transportation to the job site.

Dore decided when Lentz would appear for work, what job duties he would perform each day, how he would perform the duties, with whom he would work, when he would take his breaks, when he would go to lunch, when he would return from lunch, and when his day would end. Dore had "direct" employees who performed the same type of general labor performed by Lentz, although Temps workers such as Lentz were not permitted to operate machinery. Lentz acknowledges that all the workers on the job site started work at

---

numbered paragraph and, in the case of disagreement, make pinpoint references to evidentiary materials demonstrating the existence of a genuine issue of material fact. The "FACTS" section of this Memorandum and Order is derived directly from the undisputed facts set forth in Dore's brief (Filing No. 33-1, ¶¶ 1–7, 9–14, 16–18, 21–30, 32–33, 35–42), specifically acknowledged in the corresponding paragraphs in the responsive briefs of Lentz and Temps (Filing Nos. 35, 36).

essentially the same time, broke for lunch at the same time, reassembled after lunch at the same time, and were given afternoon instructions at the same time, upon the direction of Dore supervisors.  Lentz also acknowledges that Dore supervisors were in charge of all Temps workers on the job site; that Dore controlled the job site; that the details of the work he performed were determined by Dore; that the tools and materials he needed to perform the "clean up" work were provided by Dore; that Dore provided him with safety training upon arrival at the job site and the opportunity to attend weekly toolbox safety meetings; and that Dore was the entity that determined whether his work was satisfactory.  It was also Lentz's understanding that Temps staff had no authority to access the job site except through Dore.  Lentz notes, however, that Temps did set certain rules regarding what he could and could not do at the job site.

On November 4, 2002, after working for Dore for about two weeks, Lentz's job assignment was to work behind a tractor/bobcat, moving hoses so the machine could maneuver and drill blast holes.  Lentz acknowledges that he reported to a Dore supervisor who ran the bobcat, who determined where Lentz should be, and who determined how Lentz could best perform the work needed to drill the holes.  On that date, Lentz fell down an elevator shaft, suffering personal injuries.  Temps acknowledges that on the day of the accident, Lentz had the choice to work for Dore, not to work at all, or to work for a different client.

Temps has paid workers' compensation benefits to Lentz as a result of the injuries he sustained.

4

## STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Cordry v. Vanderbilt Mortg. & Fin., Inc.*, 445 F.3d 1106, 1109 (8th Cir. 2006) (quoting *Bockelman v. MCI Worldcom, Inc.*, 403 F.3d 528, 531 (8th Cir. 2005)). The proponent of a motion for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The proponent need not, however, negate the opponent's claims or defenses. *Id.* at 324–25.

In response to the proponent's showing, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). A "genuine" issue of material fact is more than "some metaphysical doubt as to the material facts." *Id.* at 586.

"[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). "If the evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Id.* at 249–50 (citations omitted).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp.*, 477 U.S. at 327.

## DISCUSSION

The issue before this Court is whether Lentz was an employee of Dore as a matter of Nebraska law at the time of the accident, limiting Lentz's remedies against Dore to those available under Nebraska's workers' compensation statutes. Dore contends that Lentz was its employee under Nebraska's loaned servant doctrine. Lentz and Temps contend that genuine issues of material fact remain regarding whether or not Lentz was an employee of Dore under the loaned servant doctrine.

"[T]he Nebraska Workers' Compensation Act is an employee's exclusive remedy against an employer for an injury arising out of and in the course of employment." *Kaiser v. Millard Lumber, Inc.*, 587 N.W.2d 875, 880 (Neb. 1999). "[W]hen a general employer, like a labor broker, 'loans an employee to another for the performance of some special service, then that employee . . . may become the employee of the party to whom his services have been loaned.'" *Id.* (quoting *Daniels v. Pamida, Inc.*, 561 N.W.2d 568, 571–72 (Neb. 1997)). "If such is the case, then the employee is simultaneously the employee of both the labor broker and the party to whom his services were loaned, and thus workers' compensation would be the sole remedy for the employee as to either employer." *Id.*

The Nebraska Supreme Court has used the following test for determining whether one to whom a laborer's services have been loaned is an "employer" within the meaning of the Nebraska Workers' Compensation Act:

> When a general employer lends an employee to a special employer, the special employer becomes liable for workmen's compensation only if:
> (a) the employee has made a contract of hire, express or implied, with the special employer;
> (b) the work being done is essentially that of the special employer; and
> (c) the special employer has the right to control the details of the work.
> When all three of the above conditions are satisfied in relation to both employers, both employers are liable for workmen's compensation.

*Id.* (quoting *Daniels*, 561 N.W.2d at 572; citing Neb. Rev. Stat. §§ 48-114 (Reissue 1993) and 48-115(2) (Reissue 1988)).

There appears to be no dispute that the work being done by Lentz was essentially that of the special employer, Dore. Part (b) of the three-part analysis, therefore, is satisfied. With respect to Dore's right to control the details of the work, Temps points out that there is some dispute about whether its supervisor visited the job site only once, or three to four times. Lentz also notes that Temps had certain rules about what its employees could and could not do on a job site. I find, however, that there is no genuine factual dispute that Dore controlled the details of the work. Part (c) of the three-part analysis, therefore, is also satisfied.

The focus of contention is on part (a) of the analysis: did Lentz make a contract of hire, express or implied, with Dore? "Whether a contract of hire is established is ordinarily a question of fact." *Id.* at 881. "A court may find a contract of hire established as a matter of law . . . only when but one inference can reasonably be drawn from the facts." *Id.*

As is the case at hand, the plaintiffs in *Kaiser* and *Daniels* were employed by labor brokers who paid their wages, provided all payroll services, and assigned them to work for the defendant companies. The plaintiffs had the right to refuse to report to any assignment as well as the right to terminate any assignment given. The plaintiffs voluntarily went to work for the defendants and performed the tasks assigned to them. In *Daniels*, the Nebraska Supreme Court held, as a matter of law, that the plaintiff entered into an implied contract of hire with the defendant:

> The relevant facts stated in *Daniels* to prove an implied contract of hire focused solely upon the *employee's* intent. Those facts are that the loaned employee (1) had the right to refuse an assignment by the labor broker, (2) voluntarily went to work for the special employer, and (3) performed the tasks assigned to him by the special employer. However, facts were present which reasonably inferred Pamida, the special employer, intended to consider Daniels, the loaned employee, as its employee. Specifically, evidence that Pamida personnel were Daniels' exclusive supervisors and controlled all details of Daniels' work on its premises indicated Pamida intended to enter an implied contract of hire with Daniels.

*Id.* at 882.

In *Kaiser*, the plaintiff attempted to distinguish his case from *Daniels,* contending that he was not an employee of the defendant because (1) he was treated differently than the defendant's regular employees in that he did not receive the same safety training, (2) he paid for his own hard hat, (3) the labor broker intended that it remain as Kaiser's sole employer, and (4) the labor broker set up Kaiser's pay schedule and provided his benefits. The Nebraska Supreme Court found Kaiser's arguments unpersuasive. In *Kaiser*, as in *Daniels*, summary judgments entered for the defendant companies were affirmed by the Nebraska Supreme Court.

Lentz and Temps argue that Dore's direct employees were in some respects treated differently than Lentz. However, those alleged differences do not relate to the nature of the control and direction exercised by Dore over both the direct employees and Lentz. Lentz and Temps also assert that there are genuine issues of material fact regarding whether the parties intended that Lentz be an employee of Dore. Temps notes that Dore agreed not the hire Lentz directly during a four-week trial period, and both Temps and Lentz contend that a jury could conclude that the parties' subjective intentions do not support the inference that Lentz made a contract of hire with Dore.

The Nebraska Supreme Court has required that parties' intent to make a contract of hire be determined based on "objective manifestations—the conduct of the parties, language used, or acts done by them, or other pertinent circumstances surrounding the transaction." *Id.* at 882. "Testimony regarding subjective, secret intentions or understandings is not probative evidence." *Id.* Moveover, the intent of the labor broker, Temps, is irrelevant. *Id.* at 884. Lentz's and Dore's objective manifestations of intent to form a contract of hire in this case are not distinguishable from the objective manifestations of intent in *Kaiser* and *Daniels.* Accordingly, all three of the *Daniels* criteria have been met, demonstrating that Dore was the employer of Lentz under Nebraska's loaned servant doctrine.

## CONCLUSION

I am mindful that Lentz was a day-laborer, with a large family, working for $6.00 per hour, and that he suffered serious injuries. Sympathy for Lentz and his family members, who are also plaintiffs in this action, does not relieve this Court of its responsibility to apply

the law.[2]  As in *Daniels* and *Kaiser*, there is no genuine issue of material fact in this case, and the Defendant, Dore, is entitled to judgment as a matter of law.

IT IS ORDERED:

1.  The Motion for Summary Judgment of Defendant Dore & Associates Contracting, Inc., is granted; and

2.  A separate Judgment will be entered.

DATED this 19th day of January, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[2]  If Nebraska Supreme Court precedent were disregarded to allow this case to be presented to a jury, the protection that the Nebraska workers' compensation statutes provide to other workers could well be undermined.  The holdings in *Daniels* and *Kaiser* prevent employers from contracting with labor brokers to circumvent the obligation to provide workers' compensation coverage.  Like the workers' compensation statutes themselves, the holdings in *Daniels* and *Kaiser* ensure certain protection for workers who are injured on the job, and, conversely, limited liability for employers.